LAKE O'WOODS RECREATION CLUB *v.* CHARLES N. RYAN

(No. 9035)

Submitted September 11, 1940. Decided October 8, 1940.

F. E. *Parrack* and F. *Evan Parrack,* for appellant.
I. R. *Mattingly* and *Charles P. Wilhelm,* for appellee.

KENNA, JUDGE:

This proceeding was brought in the Circuit Court of Preston County for the purpose of enjoining the continuous trespass of the defendant, Charles N. Ryan, upon the land of the complainant, Lake O'Woods Recreation Club, consisting of a thousand and twenty acres lying in Grant District. The original bill of complaint was filed on the first Monday in October, 1937. On the 27th day of October, an order was entered filing the amended and supplemental bill of the complainant, reciting the appearance of the defendant, Charles N. Ryan, the defendant's demurrer to the amended and supplemental bill as well as to the original bill, the overruling of the demurrers, the giving of the required notice and the granting of the injunction prayed for until the further order of the court. On the 3rd day of November, 1937, an order was entered filing the answer of Charles N. Ryan to the complainant's bill. Depositions of twenty-four witnesses were taken, and, on May 26, 1939, a decree was entered perpetuating the injunction as granted and making a part of the record an exhaustive and able written opinion by the Honorable Harlan M. Calhoun, judge of the twenty-second circuit, Honorable A. G. Hughes, judge of the Preston County Circuit Court, having considered himself disqualified to

sit. This appeal was granted upon the defendant's re-application.

The complainant's original and amended and supplemental bills set up the undisputed and sole ownership of the plaintiff to the entire boundary of ten hundred and twenty acres, exhibiting the deed under which Lake O'Woods Recreation Club claims to hold. The answer filed by the defendant alleges that he is the owner of two hundred acres under a deed from Jesse H. Benton, dated November 7, 1930, but fails to set that deed up as an exhibit. A thorough and careful reading of the defendant's answer justifies the conclusion that the defendant is claiming a part of the boundary described in the complainant's bill, although nowhere in the answer is there a distinct and positive averment of defendant's claim of an interlock, nor do we find from the pleadings and proof a way by which the defendant's claim of ownership of a part of the land described in the plaintiff's deeds as "Tract No. 3" may be definitely located.

The plaintiff's property and that of the defendant adjoin, and the use of a roadway extending through the property of the plaintiff from their common corner at or near Wymps Gap diagonally across the tract described in the plaintiff's deed as tract number three to a place called Valley Furnace and the hauling of lumber in heavy truckloads with resultant damage to plaintiff's recently constructed road on approximately the same location as the alleged pre-existing road, is the basis for this controversy. From Wymps Gap the alleged roadway extends southwest in the opposite direction from Valley Furnace across the land of the defendant to Sand Springs. An unsupported map made and filed by an engineer employed by the defendant indicates a triangular shaped interlock apparently encroaching upon the land of the defendant almost directly north of Wymps Gap.

From an examination of this rather intricate record it appears that the main controversy involves the question of whether the defendant, Ryan, had established an ease-

ment or private right-of-way or whether there is a public road from Wymps Gap to Valley Furnace through the lands of the plaintiff. The plaintiff took the position that neither it nor its predecessors in title had either granted or permitted the establishment of a right-of-way, although certain trails over their lands in the same general direction as the right-of-way claimed by the defendant had been occasionally used with the consent of the owner, the defendant Ryan having sought the consent of the plaintiff for that purpose by a letter introduced in evidence, and also by the admitted request of one of Ryan's employees. Ryan claimed that the old roadway had been in use since prior to 1819, basing that claim upon the fact that an old burial ground is located upon the claimed right-of-way near Wymps Gap, and that on that ground there is a tablet recording a burial in that year. It is not shown whether the ground in question was used as a private or public cemetery. The defendant also contends that Valley Furnace at one time smelted iron ore mined in the surrounding territory and shipped its product to Pittsburgh, resulting in so general a use of the roadway through plaintiff's land to Valley Furnace that a publicly constructed bridge across a small stream shown by the abutments still standing was a consequence. Elderly witnesses testified to the general use of a roadway through plaintiff's land as long ago as 1880.

Summing up the contentions and the testimony, we are of the opinion that the defendant has been unable to locate with sufficient accuracy the claimed roadway.

The answer of the defendant admits the plaintiff's title to part of the land described in the bill of complaint, and avers that the roadway which the bill alleges defendant is wrongfully using lies wholly upon that part of the land described in the deed under which plaintiff claims as "Tract No. 3." The proof establishes that plaintiff is in actual possession of the land so described and has constructed a roadway thereon. The greater part of this record consists of testimony having to do with whether the roadway leading northeast from Wymps Gap to Val-

ley Furnace was at any time a public road or was not, the defendant's contention being that if at any time a public road existed and its location is definitely ascertained, his right to a user can be precluded only by the public authorities' abandonment of the public right, which is not shown. The plaintiff takes the position that the establishment of a public road has not been shown by either actual or presumed dedication and that the only use to which the trails through its property have been put arose through the acquiescence and permission of the then owner. An examination of the record in detail discloses that there is a conflict on every material question of fact submitted to the trial chancellor, and that the decree should therefore not be disturbed due to an erroneous finding of fact.

The scope of, and the territory covered by, the final decree, however, has given us no little concern. The defendant is enjoined from trespassing upon the land of the plaintiff as described in the bill of complaint. That embraces ten hundred and twenty acres. The answer of the defendant avers, in effect, that he claims a right-of-way over only that part of plaintiff's land described in the plaintiff's deed as "Tract No. 3" and that plaintiff's exclusive title to its other three tracts is undisputed by the defendant. The defendant now claims that the final decree embraces an interlock of which he is vested with the superior title and that as a consequence, he has been enjoined from using his own land.

It requires a very careful reading of the defendant's answer to justify the conclusion that an adverse title to a part of the boundary described in plaintiff's bill of complaint is adequately alleged. Conceding, however, that the general allegations of defendant's answer sufficiently disclose a contended interlock, there is nowhere in the answer nor in the exhibits filed therewith a sufficient description or an adequate means of locating the contended interlock to justify holding that there was an issue involving that question. Furthermore, the right-of-way contended for by the defendant as located by the engineer

sent by the defendant upon the property to make a survey, although, as stated, we do not feel that the plat is adequately supported by title papers, does not pass through the interlock. Therefore, the question thus raised does not go to the merits of the contention before the court nor the right of the defendant based upon either a public or private right of way to pass over any part of the plaintiff's land, but only goes to whether the description of the land contained in the court's decree perpetuating the injunction includes any land claimed by the defendant, and thus might be considered as affecting the basic title of either to the land within the interlock. We do not think that the decision of the questions now before us requires an adjudication of the title to the claimed interlock. We are only holding that defendant, Charles N. Ryan, has established no right-of-way over plaintiff's "tract three," and modify the language of the injunctive order to that extent. This modification is so slight, however, that in our opinion it does not call for a reversal.

For the foregoing reasons, the decree of the trial chancellor is affirmed as modified, the order not to affect the title of the defendant to the contended interlock as disclosed by this record.

*Modified and affirmed.*